# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID PEASLEE, | ) | NO. CV 08-3582-DDP(CT) |
| | ) | |
|     Petitioner, | ) | ORDER ACCEPTING |
| | ) | MAGISTRATE JUDGE'S |
| | ) | REPORT AND RECOMMENDATION |
|     v. | ) | |
| | ) | |
| JOHN MARSHALL, Warden, | ) | |
| | ) | |
|     Respondent. | ) | |

Pursuant to 28 U.S.C. § 636, the court has reviewed the entire file de novo, including the magistrate judge's report and recommendation and petitioner's objections.

Petitioner objects to the magistrate judge's findings based on the California Supreme Court's recent decision in In re Lawrence, __ Cal. Rptr. 3d ___, 2008 WL 3863606 (Cal.).

In Lawrence, the California Supreme Court clarified the standards for determining parole suitability and how the suitability and unsuitability factors set forth in the regulations relate to the ultimate determination of suitability under California law. The court emphasized that the "fundamental consideration in parole decisions is public safety" and that "the core determination of 'public safety' under the statute and

1 corresponding regulations involves an assessment of an inmate's
2 *current* dangerousness." Id. at * 12 (emphasis in original).  Thus,
3 in weighing the parole suitability factors present in a particular
4 inmate's case, the Board of Parole Hearings ("Board") and Governor
5 must consider only the factors "relevant to predicting 'whether the
6 inmate will be able to live in society without committing
7 additional antisocial acts.'" Id. (citation omitted).

8      With respect to consideration of the commitment offense, the
9 court moved away from its previous articulation in In re
10 Dannenburg, 34 Cal. 4th 1061 (2005) and In re Rosencrantz, 29 Cal.
11 4th 616 (2002) to the extent that those decisions have been be read
12 to permit the Board or Governor to deny parole solely based on the
13 fact that the commitment offense was "particularly egregious."  See
14 id. at *13-*14, *18, *20-*23.  The court explained, "it is not the
15 circumstance that the crime is particularly egregious that makes a
16 prisoner unsuitable for parole – it is the implication concerning
17 future dangerousness that derives from the prisoner having
18 committed that crime." Id. at * 18.

19      Thus, under California law the Board and Governor may consider
20 the circumstances of the commitment offense, but only insofar as
21 those circumstances relate to the inmate's current dangerousness.
22 Id. at *18, *23.  However, as the California Supreme Court noted,
23 in some cases, in light of other factors in an inmate's case, "the
24 aggravated circumstances of the commitment offense may well
25 continue to provide 'some evidence' of current dangerousness even
26 decades after commission of the offense." Id. at *28.  The court
27 further noted that its articulation of the proper standard "should

28                                2

1  not produce a wave of reversals of decisions denying parole"
2  because in the "overwhelming majority" of California cases decided
3  under the California Supreme Court's earlier articulation of the
4  standard, there were factors in addition to the commitment offense
5  establishing unsuitability.  Id.

6  　　In Lawrence, the California Supreme Court found that the
7  Governor's decision to deny parole was not supported by some
8  evidence.  The decision under review was the Governor's *fourth*
9  reversal of the Board's grant of parole.  In addition, the crime
10 was committed under stress, the petitioner had no prior criminal
11 history, she had engaged in extraordinary rehabilitative efforts
12 while incarcerated, and her recent psychological assessments
13 indicated no significant risk of danger to the public if released.
14 See id. at *1, *2-*9, *23-*28.

15 　　Petitioner's case is different.  As discussed in the report
16 and recommendation, the Board properly considered the facts of the
17 commitment offense, which were aggravated, in determining whether
18 petitioner currently presented an unreasonable risk to society if
19 released.  The attack on the victim was premeditated, brutal, and
20 for the purpose of retaliating against the victim for failing to
21 comply with the terms of the sale of petitioner's car.  Further,
22 unlike the petitioner in Lawrence, petitioner had a history of
23 criminal activity prior to committing the murder for which he is
24 incarcerated.  The fact that the commitment offense is not the sole
25 instance of criminal conduct prior to incarceration is relevant to
26 a prisoner's potential for returning to crime after release.  See
27 In re Shaputis, ___ Cal. Rptr. 3d ___, 2008 WL 3863608

28
　　　　　　　　　　　　　　　　　3

(Cal.)(holding, in a decision issued on the same day as <u>In re Lawrence</u>, that the Governor's reversal of parole based on the prisoner's past history of criminal and violent conduct and the circumstances of the crime was supported by some evidence despite the fact that the prisoner was 71, had been incarcerated for almost two decades, had an exemplary prison record which included participation in rehabilitation, and had been evaluated as presenting a low risk for violence absent a relapse into alcoholism).

Further, unlike <u>Lawrence</u>, the psychologists who most recently evaluated petitioner continued to find that he *currently* presents a low *to moderate* risk for recidivism (i.e., committing another violent crime) while in the free community. (Pet., Ex. D at 4, 10). According to one of the psychological tests administered during the 2001 evaluation, petitioner was in a category which represented a 44% chance of recidivism within the next seven years. (<u>Id.</u> at 10). The evaluator found that petitioner's risk factors seemed "at least partially contained" and that he appeared to be working toward a higher level of containment. (<u>Id.</u>) Accordingly, the Board had petitioner evaluated before the most recent hearing to update the previous report and determine whether the risk had changed. The evaluator found that it had not. (<u>Id.</u> at 1, 4). Moreover, although the reports indicate insight into the crime and remorse, the psychologist evaluating petitioner made it clear that those factors had already been considered in the risk evaluation. (Pet., Ex. D at 4).

The Board found that petitioner needed a longer period of

4

observation before the Board could find that he is suitable for parole.  (Lodgment 7 at 136).  Petitioner's recent psychological evaluations, in the context of his commitment offense and past criminal history, constituted "some evidence" supporting the Board's decision that petitioner's release at this time would present an unreasonable risk of danger to the public.

The California courts, including the California Supreme Court in an order signed by Chief Justice George, the author of the Lawrence decision, denied relief because some evidence supported the Board's decision.  This determination was not an unreasonable application of Superintendent, Mass. Correctional Institution, Walpole v. Hill, 472 U.S. 445 (1985) and did not involve an unreasonable determination of the facts.

Accordingly, IT IS ORDERED:

1. Respondent's request to stay the proceedings is denied.
2. The report and recommendation is accepted.
3. Judgment shall be entered consistent with this order.
4. The clerk shall serve this order and the judgment on all counsel or parties of record.

DATED: May 27, 2009

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

5